UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.

CASE NO. 6:05-cr-82-Orl-19KRS

EDWARD T. BYRD

## PLEA AGREEMENT

### A. Particularized Terms

Pursuant to Fed. R. Crim. P. 11(c) and 20, the United States of America, by Paul I. Perez, United States Attorney for the Middle District of Florida, and Marcos Daniel Jimenez, United States Attorney for the Southern District of Florida, and the defendant, EDWARD T. BYRD, and the attorney for the defendant, A. Brian Phillips, mutually agree as follows:

### 1. Count Pleading To

The defendant shall enter a plea of guilty to Count One of the Indictment from the Southern District of Florida, Case No. 05-60049-Cr-SEITZ. Count One charges the defendant with using a means of interstate commerce, that is the internet, to knowingly attempt to persuade, induce, and entice a minor to engage in any sexual activity for which he could be charged with a criminal offense, in violation of 18 U.S.C. § 2422(b).



Defendant's Initials

AF Approval
Chief Approval

2. **Minimum and Maximum Penalties**

Count One is punishable by a mandatory minimum term of imprisonment of five years up to thirty years, a fine of up to $250,000, a term of supervised release of not more than three years, and a special assessment of $100 per felony count; said special assessment to be due on the date of sentencing. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offenses, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offenses, or to the community, as set forth below.

3. **Elements of the Offense**

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty. The elements of Count One are:

- **First**: That the defendant knowingly used a computer to attempt to persuade, induce, entice an individual under the age of eighteen (18) to engage in sexual activity, as charged;

- **Second**: That the defendant believed that such individual was less than eighteen (18) years of age;

- **Third**: That if the sexual activity had occurred, the defendant could have been charged with a criminal offense under the law of Florida; and

- **Fourth**: That the defendant acted knowingly and willfully.

Defendant's Initials _____ 2 Chief Approval __CSA__

4. **No Further Charges**

If the Court accepts this plea agreement, the United States Attorney's Offices for the Middle District of Florida and the Southern District of Florida agree not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Offices at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

6. **Utilization of the Sentencing Guidelines**

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the Court determine a sentence pursuant to the United States Sentencing Guidelines and impose that sentence.

7. **Acceptance of Responsibility - Three Levels**

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant complies with the provisions of USSG §3E1.1(b), the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with

Defendant's Initials    3   Chief Approval _CSA_

the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

8. **Use of Information - Section 1B1.8**

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

9. **Forfeiture of Assets**

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 2253(a)(3), whether in the possession or control of the United States or in the possession or control of the defendant or defendant's nominees. The assets to be forfeited specifically include, but are not limited to, the following: (1) One Dell Inspiron 8600 laptop computer, serial number 21018801637; (2) One dell 64MB thumb drive, no model or serial number; (3) One PalmOne Treo600 personal digital assistant (combination PDA, Sprint cellular telephone and digital camera), serial number HBSAD4061AOFL; and (4) Two Imation floppy diskettes unlabeled (one red in color, one black in color). The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action. The defendant also hereby agrees that the forfeiture described herein is not excessive

Defendant's Initials   4  Chief Approval CJA

and, in any event, the defendant waives any constitutional claims that the defendant may have that the forfeiture constitutes an excessive fine.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to the provisions of Rule 32.2(b)(1), the United States and the defendant request that at the time of accepting this plea agreement, the court make a determination that the government has established the requisite nexus between the property subject to forfeiture and the offense(s) to which defendant is pleading guilty and enter a preliminary order of forfeiture. Pursuant to Rule 32.2(b)(3), the defendant agrees that the preliminary order of forfeiture shall be final as to the defendant at the time it is entered, notwithstanding the requirement that it be made a part of the sentence and be included in the judgment.

The defendant agrees to forfeit all interests in the properties described above and to take whatever steps are necessary to pass clear title to the United States. These steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Defendant further agrees to take all steps necessary to locate property and to pass title to the United States before the defendant's sentencing. To that end, defendant agrees to fully assist the government in the recovery and return to the United States of any assets, or portions thereof, as described above wherever located. The defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control and those which are held or controlled by a nominee. The

Defendant's Initials 5 Chief Approval CJA

defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States.

The defendant agrees that the United States is not limited to forfeiture of the property described above. If the United States determines that property of the defendant identified for forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; then the United States shall, at its option, be entitled to forfeiture of any other property (substitute assets) of the defendant up to the value of any property described above. This Court shall retain jurisdiction to settle any disputes arising from application of this clause. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

10. **Guidelines Sentence**

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced in accordance with the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court,

Defendant's Initials   6  Chief Approval CSA

neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

B.  **Standard Terms and Conditions**

   1.  **Restitution, Special Assessment and Fine**

   The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1) (limited to offenses committed on or after April 24, 1996); and the Court may order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663 (limited to offenses committed on or after November 1, 1987) or § 3579, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. On each count to which a plea of guilty is entered, the Court shall impose a special assessment, to be payable to the Clerk's Office, United States District Court, and due on date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

   2.  **Supervised Release**

   The defendant understands that the offense to which the defendant is pleading provides for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

Defendant's Initials   7  Chief Approval CJA

3. **Sentencing Information**

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit, upon execution of this plea agreement, an affidavit reflecting the defendant's financial condition. The defendant further agrees, and by the execution of this plea agreement, authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office or any victim named in an order of restitution, or any other source, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court.

4. **Sentencing Recommendations**

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a

Defendant's Initials   8  Chief Approval  CSA

decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

5. **Appeal of Sentence-Waiver**

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence or to challenge it collaterally on any ground except (a) an upward departure by the sentencing judge from the guidelines range determined pursuant to the United States Sentencing Guidelines; (b) a sentence that exceeds the statutory maximum penalty; or (c) a sentence that violates the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by Title 18, United States Code, Section 3742(b), then the defendant is

Defendant's Initials    9   Chief Approval  CJA

released from his waiver and may appeal the sentence as authorized by Title 18, United States Code, Section 3742(a).

6. **Middle and Southern Districts of Florida Agreement**

It is further understood that this agreement is limited to the Offices of the United States Attorneys for the Middle District of Florida and the Southern District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

7. **Filing of Agreement**

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

8. **Voluntariness**

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if

Defendant's Initials    10   Chief Approval CSA

any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. Defendant knowingly and voluntarily waives any rights defendant has under federal law to a jury determination of any fact affecting defendant's sentence. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

9. **Factual Basis**

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt:

Defendant's Initials    11   Chief Approval  CJA

## FACTS

Between December 16, 2004 and February 12, 2005, the defendant, EDWARD T. BYRD, used facilities of interstate commerce, that is a computer and internet messaging service and a telephone, to contact a person whom he believed to be a minor.

BYRD used a commercial computer service to communicate with an undercover officer, Detective Joseph Vella of the Broward County Sheriff's Office, also a member of the Law Enforcement Against Child Harm (LEACH) Task Force. During this investigation, Det. Vella used a screen name and a profile of a 14-year-old girl named Emily, in instant messages, e-mail messages, and/or telephone conversations. Edward T. BYRD used screen names *Orlandodady* and *Olderdom58* to communicate with "Emily" and told "Emily" he was a 58-year-old man who wished to converse and meet with her.

BYRD knowingly attempted to persuade, induce, and entice "Emily" to engage in sexual activities. BYRD used sexually explicit language to describe acts that he would like to engage in with "Emily." On December 16, 2004, BYRD in an instant message communication told "Emily", "... I like to do different things in sex that are fun but for real . . . let's say we hooked up... and did it... I wouldn't wanted to just once.... I'd want to a lot."

On December 17, 2004, BYRD initiated an instant message communication to "Emily" and requested a photograph of Emily. BYRD provided "Emily" with an email address olderdom58@yahoo.com for "Emily" to use to send her photograph. During this instant message, BYRD engaged "Emily" in conversation about chat rooms, and said to

Defendant's Initials _____   12   Chief Approval __CJA__

"Emily," "I like the older men for younger women kinda rooms . . . some of the daddy/daughter ones too." BYRD also identified himself as "Ned" and described to "Emily" what he would do during a "first time" sexual encounter telling "Emily," "well the first time is very different . . . it's her time . . . you have to be very slow . . . very patient . . . lots of kissing . . . touching . . . foreplay . . . but very slow." He further said, "well like say it were you . . . and I were going to unbutton your blouse . . . I would kiss you and then tell you . . . and then start ... I'd ask you . . . how things felt . . . and judge your responses by how you react."

On December 28, 2004, during an instant message communication, BYRD told "Emily" that he traveled to south Florida twice a month and asked "Emily," "supposed we hooked up . . . and we liked each other . . . (which I'm sure we would) . . . would you wanna go someplace and be alone?"

On December 29, 2004, during an instant message communication, BYRD told "Emily," "your cute, cuddly, sexy . . . and if [ ] we ever met . . . you'd go with me where ever I wanted you to and let me do whatever I wanted to do . . . to please me." BYRD added, ". . . I could get in terrible trouble because of your age . . . if it were ever found out."

On January 5, 2005, during an instant message chat, the undercover told BYRD that "she" was almost caught by "her" mom who came in and almost saw the webcam during one of their chats. BRYD told "Emily," "not to take any chances like that," to "be careful," and that "her" mom would "certainly misunderstand."

During an instant message on January 6, 2005, BYRD engaged "Emily" in a sexually explicit conversation, telling "Emily," "I don't like on-line role play . . . I much

Defendant's Initials      13     Chief Approval CJA

prefer it to be real," adding further, "so would you want me to little-girl talk you . . . like you're my little girl . . that's hot . . so you'd want to please daddy? you'd want to do anything to please him." BYRD explained that he intended to travel to Plantation, where he believed "Emily" lived, to meet "Emily" for sex. At the end of this communication, BYRD requested to speak with "Emily" over the telephone.

On January 13, 2005, in an instant message, BYRD urged "Emily" to express herself, her wants, needs and desires, telling her that she still would not open up.

On January 19, 2005, in an instant message, BYRD told "Emily," "its always nice to catch you...maybe one day for real huh." BYRD asked Emily, what they would do if they were alone, urging "Emily" to tell him. BYRD said, "let me hear it from you...what would we do . . . [E]m I can't ...I can't tell you...you have to tell me." BYRD stated he couldn't "open up" unless he heard it from "Emily" first, saying "I can after you do...but I have to hear it from you first...but what do you want to do." When the undercover responded, "going all the way," BYRD stated "do you want that . . . .," adding that he was not used to stopping. BYRD urged "Emily" to explain what she meant by "all the way . . . the language, the lingo . . ., " and said that "Emily" was being timid. When the undercover responded "like fucking," BYRD stated "yes," that he loved the word "fuck " and that he liked talking in the exact terms and he loved talking naughty in bed. When "Emily" stated that she did not want to get pregnant, BYRD told "Emily" that he had a vasectomy years ago and that he could not get a girl pregnant. The conversation became more sexually explicit, with BYRD asking the undercover, "you want daddy to fuck you? . . do you want to be naughty with daddy?" BYRD then told "Emily," "if we do this . . . it has to be contained . . . to daddy/daughter . . . it can be just as much fun . . .

Defendant's Initials     14    Chief Approval CJA

if not more." BYRD told the undercover, that "the real fun starts after the first time." BYRD asked Emily, "princess are you ready to feel daddy's cum shoot in you? Would that turn you on?" BYRD also asked "Emily" if she wore skirts to school, what kind of panties she liked, and what her bra size was.

On January 26, 2005, during a instant message, BYRD told "Emily" that she was his "only little girl," but they needed to make it official. Explaining that it would be official "when my cums in my baby." BYRD then asked "Emily" if his statement sent a wave through her and did she "get a little wet." BYRD also asked Emily, "when you do yourself, do you slip your fingers in all the way?" When the undercover responded yes, BYRD said, "you really are ready aren't you baby . . . 4 daddy . . . 4 daddy's cum right."

On January 29, 2005 and February 9, 2005, two telephone conversations were recorded between BYRD and a female undercover officer posing as the 14 year old Emily. During both communications, BYRD engaged the undercover in a sexually intimate conversation and discussed traveling to meet with "Emily" to have sex.

On February 12, 2005, BYRD was observed entering the parking lot of the hotel, the location where he had arranged with "Emily" to meet. BYRD checked into the hotel and was assigned a room. Upon arrival, BYRD contacted "Emily" via instant message and told her what room he was checked in. An undercover agent, dressed in the manner previously arranged with BYRD approached the room, knocked and was allowed entry. BYRD was placed under arrest.

FBI agents and officers assigned to the LEACH Task Force secured and executed a search warrant of BYRD's hotel room. In the room, agents recovered physical evidence corroborative of the intent to engage in sexual activity. In addition,

agents seized a Dell Inspiron 8600 laptop computer, serial number 21018801637; Dell 64mb USB thumb drive, no model or serial number; PalmOne Treo600 personal digital assistant (combination PDA, Sprint cellular telephone and digital camera), serial number HBSAD4061A0FL; and two Imation floppy diskettes unlabeled (one red in color; the other black in color). The Dell laptop computer and the PalmOne were utilized for the internet contact with "Emily".

The acts which BYRD attempted to persuade, induce, and entice "Emily" to engage in would be a criminal offense under the laws of the State of Florida, Florida Statute, Section 800.04, which criminalizes the conduct of any person who encourages, forces, or entices any person less than 16 years of age to engage in acts involving sexual activity. Under this law the term "sexual activity" includes oral, anal or vaginal penetration by, or in union with, the sexual organ of another or the anal or vaginal penetration of another by an object. Neither the victim's lack of chastity nor the victim's consent is a defense to the crime proscribed by this section. Fla. Stat. §800.04.

10. **Entire Agreement**

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

11. **Certification**

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this 5th day of May (April crossed out), 2005.

PAUL I. PEREZ
United States Attorney
  for the Middle District of Florida

MARCOS DANIEL JIMENEZ
United States Attorney
  for the Southern District of Florida

By: _____
Robin Waugh-Farretta
Assistant United States Attorney
  for the Southern District of Florida

_____
EDWARD T. BYRD
Defendant

_____
Carolyn J. Adams
Assistant United States Attorney
Chief, Orlando Division

_____
A. Brian Phillips
Attorney for Defendant

N:\_Criminal Cases\b\Byrd, Edward T _2005R00446_CJA\/_plea agreement.wpd

Defendant's Initials _____      17      Chief Approval CJA